CHARLES R. LANGDALE

*v.*

THE PEOPLE OF THE STATE OF ILLINOIS.

*Filed at Springfield September 30, 1881.*

1. SCHOOL ORDER—*how it may be executed.* A school order for the payment of money may be executed by the president and secretary of the board, or by a majority of the directors who constitute the board, and when executed in either way is legal.

2. INDICTMENT—*setting out instrument in hæc verba—variance.* While it is not necessary in an indictment for passing a fictitious school order, after setting out the order in substance, to give it *in hæc verba*, yet if the pleader attempts to do so, he will be bound to set out each and every part of the instrument which constitutes any part of the written contract.

3. Anything appearing on the paper constituting the order which is no part of the contract may be omitted in setting out the instrument *in hæc verba.* So, the number of a bill alleged to have been forged, and the figures on its margin, and the dollar mark and figures indicating the amount of dollars on the margin of an order, need not be given.

4. Same—*in description of school order.* The words "school order," on the face of an instrument, constituting no part of the contract, but being the trade mark of the party printing the orders, may be omitted in the copy given in an indictment; and where a copy of a fictitious school order read, after the word dollars, "for Mott's mordern mode charts," instead of "for Mott's modern mode charts," the variance was held too slight and unimportant to reverse a judgment of conviction.

5. Check mark—*no part of contract.* Where the words used in the body of a note or order for the payment of money are ambiguous, leaving the amount intended uncertain, resort may be had to the figures in the margin to determine the true sum; yet such figures are, strictly speaking, no part of the contract.

6. Evidence—*certified copy of plat of township.* On the trial of one for passing a fictitious school order, purporting to have been given by the directors of a school district, the court admitted in evidence a certified copy of the plat of school districts of the county by the county clerk, the certificate failing to show that the clerk was the keeper of the original records: *Held,* that the defect, if any, was obviated by the testimony of the clerk, as a witness, that the original was in his office, and that the paper was a true copy of the latest plat.

Writ of Error to the Circuit Court of Logan county; the Hon. Cyrus Epler, Judge, presiding.

Messrs. James & Wallace, for the plaintiff in error:

An order purporting to be the order of a board of school directors must be legal on its face. *Dana* v. *State,* 2 Ohio, 91; *McMillam* v. *State,* 5 id. 269.

A school order, to be legal, must be issued by the order of the board of school directors, and must be signed by the president and clerk of said board. Hurd's Stat. 1880, p. 980, sec. 67, chap. 122.

A board of school directors must be organized by electing a president and clerk, and no act of said board is legal unless so organized, and such act must show that it has been done by the president and clerk attaching their signatures thereto. Hurd's Stat. 1880, p. 968, sec. 42, chap. 122. See, also, sec. 48, same chapter and title.

If the prosecutor attempts to set out an instrument in writing, in an indictment, in words and figures, he is bound to

the strictest accuracy.    *Brown* v. *People*, 66 Ill. 344; *Griffin* v. *State*, 14 Ohio, 55; Russell on Crim. Law, vol. 2, p. 375, (5th Am. ed.); Roscoe on Crim. Ev. p. 510, (5th Am. ed.)

If an instrument in writing is offered in evidence under an indictment attempting to set it out in words and figures, and the instrument in writing offered varies in any material or descriptive part from the one set out in the indictment, it can not be permitted to go to the jury as evidence.    Wharton's Am. Crim. Law, vol. 1, secs. 306, 307, 606; 3 Starkie on Evidence, (3d Am. ed.) sec. 1530, p. 1529; *Spangler* v. *Pugh*, 21 Ill. 84; *Jacksonville, N. W. and S. E. Railway Co.* v. *Brown*, 67 id. 201.

Messrs. FORREST & HUMPHREY, for the People:

It was not necessary for the prosecution to show that the order was legal.    One of the chief elements of crime in this case is the illegality and fictitiousness of this instrument, and the knowledge of the defendant of those facts when he put it in circulation.    Under such circumstances, it matters not whether the instrument is drawn in legal form or not.

It is not necessary that an indictment purporting to set out a bill, etc., shall give the number, its vignettes, mottoes and devices, or the words and figures in the margin, which constitute no part of the contract of the forged or fictitious instrument.    *Griffin* v. *State*, 14 Ohio, 55; *Commonwealth* v. *Bailey*, 1 Mass. 62; *Commonwealth* v. *Stevens*, id. 204; *People* v. *Franklin*, 3 Johns. Cases, 298; *Commonwealth* v. *Searle*, 2 Binney, 332; *State* v. *Carr*, 3 N. H. 367; *Commonwealth* v. *Taylor*, 5 Cush. 605; *Commonwealth* v. *Wilson*, 2 Gray, 270.

Mr. CHIEF JUSTICE CRAIG delivered the opinion of the Court:

This was an indictment by the grand jury of Logan county against Charles R. Langdale, for passing a fictitious school order.

The indictment was framed under sec. 107, chap. 34, Rev. Stat. 1874, which declares: "Whoever shall make, pass, utter or publish, with an intention to defraud any other person, or with like intention shall attempt to pass    *    *    * any fictitious bill, note or check purporting to be the bill, note or check, or other instrument of writing for the payment of money or property, of some bank, corporation, copartnership or individual, when in fact there shall be no such bank, corporation, copartnership or individual in existence, the said person knowing the said    *    *    *    * instrument of writing for the payment of money to be fictitious, shall be imprisoned in the penitentiary not less than one nor more than twenty years."

It was charged in the indictment that the defendant, on the 15th day of June, 1880, with intent to defraud certain persons therein named, feloniously did pass upon and unto them a certain false and fictitious order, purporting to be issued by a corporation, to-wit: by the school directors of district number 8, in township 24, in range 4 west, in Tazewell county, in the State of Illinois, drawn upon the treasurer of said township 24, range 4 west, in said county of Tazewell, for the payment of money to the said Charles R. Langdale, or bearer, to-wit: the sum of $36, with interest thereon at eight per cent per annum, when in fact and in truth, at the time when said fictitious order was so passed as aforesaid, or at any time prior thereto, there was no such corporation or school district in existence, he, the said Langdale, well knowing the said order to be fictitious. What purports to be a copy of the order is then set out in the indictment, and the indictment then concludes in the usual manner. On a trial before a jury the defendant was found guilty, and his term of imprisonment fixed at one year in the penitentiary. To reverse the judgment this writ of error has been sued out.

It is urged that the school order read in evidence is not a legal order on its face, and as it does not purport to be a

school order, defendant is guilty of no crime in passing the order. This position is predicated on the theory that every school order, to be legal and binding, must be signed by the president and clerk of the school board. Where a board of directors have a president and clerk, and direct the payment of money from the treasurer for any legitimate purpose, it is a very proper mode of executing the school order to have it signed by the president and secretary of the board. But this is not the only method of executing such an order. Section 67, chap. 122, of the School law, in express terms authorizes a school order to be signed by a majority of the board. Under a fair and reasonable construction of the School law either method may be adopted, and whether a school order may be executed by the president and secretary of the board, or by a majority of the directors who constitute the board, can make no difference, so far as the legality of the transaction is concerned.

On the trial of the cause the attorney for the People offered in evidence the fictitious school order described in the indictment, and the defendant objected to the reading of the instrument on the ground of a variance between the instrument offered and the one described or set out in the indictment. The court overruled the objection and allowed the instrument to be read to the jury, and this decision is relied upon as error. The variance consisted of this: The order read in evidence, after the word "dollars" contained these words, "for Mott's modern mode charts." In the margin of the order was the following, "$36.00." Across the face of the order, in white letters, appeared the words "school order." The copy of the order set out in the indictment omits the words "school order," and the dollar mark and figures ("$36.00,") on the margin, and the word "mordern" is used instead of "modern." In the indictment the pleader set out the substance of the fictitious order, and then said, "being in words and figures as follows," and purported to

set out an exact copy. While it was not at all necessary to set out the order *in hæc verba* in the indictment, yet when the pleader undertook to do so, and averred that it was in the words and figures as follows, he was bound to set out each and every part of the written instrument which constituted any part of the written contract; but if anything appeared on the paper constituting the order which was no part of the contract, that might be omitted.

*Commonwealth* v. *Bailey*, 1 Mass. 62, is an authority in point. There, in an indictment for forgery, alleging an instrument to be in the words and figures following, it was held that a strict recital was necessary; but the number of a bill, and the figures in its margin making its amount, are not parts of the bill, and need not be set out in the indictment. The same rule is announced in *Commonwealth* v. *Stevens*, 1 Mass. 203, and in *Griffin* v. *The State*, 14 Ohio, 54. See, also, *Commonwealth* v. *Taylor*, 5 Cush. 605; *Commonwealth* v. *Wilson*, 2 Gray, 270; *State* v. *Carr*, 3 N. H. 376.

Where the words used in the body of a note or order for the payment of money are ambiguous, so that there is uncertainty in regard to the true amount that was intended, resort may be had to the figures in the margin of the instrument for the purpose of determining the true amount agreed to be paid, as held in *Riley* v. *Dickens*, 19 Ill. 29, and *Corgan* v. *Frew*, 39 id. 31; but the figures in the margin of an instrument are not strictly a part of the contract. They can not be reverted to to impeach the amount named in the body of the paper, and are never resorted to for any purpose unless there is uncertainty in regard to the amount written in the body of the instrument. Here there was no uncertainty whatever. The amount, plainly written in the body of the order, was $36, and the figures in the margin could be used for no purpose, and as they did not strictly form a part of the contract, in giving the copy of the order we see no reason why they might not be omitted. In regard to the words

"school order," on the face of the instrument, upon an inspection of the order these words will be found to constitute no part of the order itself, but are a part of the trade mark of Oliver, Adams & Co., printed upon their blank orders. As respects the variance between the order read in evidence and the copy in the indictment, in the use of the word "mordern" for "modern," the variance is so slight and unimportant that we can not hold it sufficient to reverse. We are, therefore, of opinion that the court did not err in the decision admitting the order in evidence.

It is also urged that the court erred in admitting in evidence a certified copy of the plat of the school districts of the county of Tazewell. It is true the county clerk did not certify that he was the keeper of the original record, but that was unimportant. The clerk was introduced as a witness, and testified that the original was in his office, and the copy offered in evidence was a true copy of the latest plat filed in his office. This we regard as sufficient.

The judgment of the Circuit Court will be affirmed.

*Judgment affirmed.*

Mr. JUSTICE SCOTT dissenting.